## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Wisconsin Resources Protection
Council, Center for Biological
Diversity, and Laura Gauger,

      Plaintiffs,                           Case No:  11-cv-45

    v.

Flambeau Mining Company,

      Defendant.

## SUPPLEMENTAL DECLARATION OF JAMES B. HUTCHISON IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

James B. Hutchison declares as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make these statements based on personal knowledge and experience.

### BACKGROUND, EXPERIENCE AND EXPERTISE

2.      I have been employed by Foth Infrastructure & Environment and Foth & Van Dyke (collectively "Foth") since 1990.  I am currently employed at Foth as a Lead Environmental Engineer.

3.      I am a licensed Professional Engineer in the State of Wisconsin and have acted as a project engineer and consultant to Flambeau Mining Company ("Flambeau" or "FMC") since 1990.  Foth has acted as a consultant to Flambeau during this timeframe. My professional work experience at the Flambeau mine site has included development and submittal of regulatory-required documents, evaluating environmental reclamation, and remediation activities and monitoring data related to soils and both surface water and

groundwater hydrology, including but not limited to, such activities related to the Industrial Outlot.

4.      I hold a Master's Degree in Civil and Environmental Engineering from the University of Wisconsin-Madison (1986) and a Bachelor's Degree in Civil Engineering from the University of Wisconsin-Platteville (1979).

5.      I am a registered Professional Engineer by the State of Wisconsin (E-22484).  I have over 20 years of professional experience and expertise in permitting complex metallic mining projects.  I have managed projects integrating environmental permitting, mine closure, engineering feasibility studies, site remediation, and environmental impact analysis.

6.      I have continuously worked on the Flambeau Mine project since 1990.  I worked as Project Manager for environmental permitting during the 1990s and have worked as Lead Engineer on site projects thereafter.  By virtue of my work at the Flambeau Mine Site, I am familiar with the 1991 Mining Permit and 1998 Modification.

7.      Pursuant to NR 216.21(2)(b)3.a., Table 4, the Wisconsin Department of Natural Resources ("WDNR") has classified metal mining as potentially a Tier 2 activity.

8.      Wisconsin's Tier 2 General Permit, in general, requires a permittee to:

     a.      Develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that utilizes source area control and treatment best management practices (NR 216.27);

     b.      Perform annual facility site compliance inspections (NR 216.28(2)); and

     c.      Perform quarterly visual inspections of storm water discharges (NR 216.28(3)).

Note that WDNR can waive the quarterly inspection requirement pursuant to NR 216.28(5)(c) where "[T]he facility is inactive or remote, such as inactive mining operations where monitoring and inspection activities are impractical or unnecessary."

9.      Wisconsin's Tier 2 General Permit does not require annual chemical monitoring of storm water discharges (*See* Sections 4 and 5 of Tier 2 General Permit WI-5067857-3; NR 216.28(4)).

10.     The 1991 Mining Permit and 1998 Modification in part require FMC to:

    a.      Develop and implement an Erosion Control, Surface Water Management Plan and Reclamation Plan that utilize best management practices (Part 2—Mining Plan Approval – Condition 10, p. 97; Part 3—Reclamation Plan Approval – Condition 7, p. 116);

    b.      File an annual mining report that includes a discussion on all activities that took place at the mining site during the year including a summary of all monitoring data and any observed trends in the monitoring data.  A copy of the most recent (2010) Annual Report is attached as Exhibit A (Part 1 General Conditions – Condition 8, p. 89; Part 2 Mining Plan Approval – Condition 4, p. 95; Part 2  Mining Plan Approval – Condition 6, p. 96; Part 4 Monitoring Plan Approval – Condition 9, p. 123; Part 4 Monitoring Plan Approval – all conditions, pp. 119-124);

    c.      File an annual reclamation report (Part 3 Reclamation Plan Approval – Condition 26, p. 119).

d.    Develop a contingency plan to address any unexpected occurrences, including elevated levels of constituents such as copper and zinc identified during monitoring (Contingency Plan—Part 1 General Conditions – Condition 9(d), p. 93; Contingency Plan—Part 2 Mining Plan Approval – Condition 5, p. 95).

11.    Below is a comparison table of general storm water requirements between Wisconsin's Tier 2 General Permit for storm water discharges associated with industrial activity and the 1991 Mining Permit and 1998 Modification.

| Tier 2 WPDES General Permit | 1991 Mining Permit and 1998 Modification |
|---|---|
| Develop and implement an SWPPP that utilizes source area control and treatment best management practices. | Develop and implement an Erosion Control Plan, Surface Water Management Plan, Reclamation Plan (including the Supplement), Monitoring Plan and Contingency Plan that utilizes source area control and treatment best management practices. |
| Perform annual facility site compliance inspection. | File annual report summarizing site activities including but not limited to inspections and monitoring. |
| Perform quarterly visual inspections. | Does not require but not necessary due to annual chemical monitoring and reporting. |
| Does not require annual chemical monitoring. | Requires annual chemical monitoring, reporting and response. |

12.    In general terms, the Erosion Control Plan, Surface Water Management Plan, Reclamation Plan, Monitoring Plan and Contingency Plan are the functional equivalent of an SWPPP.

13.    Commencing in 1999, FMC conducted chemical monitoring (including copper and zinc) of storm water overflow from the biofilter on at least an annual basis and reported those results to the WDNR.

14.    As a result of those monitoring efforts, elevated levels of copper and zinc were identified in the storm water overflow from the biofilter.   Pursuant to the contingency plan requirement of the Mining Permit, further source area control best management practices (also referred to as remediation activities) were implemented with WDNR oversight.

James B. Hutchison

Date:   December 22, 2011