UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WISCONSIN RESOURCES PROTECTION COUNCIL, CENTER FOR BIOLOGICAL DIVERSITY, AND LAURA GAUGER,<br><br>        Plaintiffs,<br><br>    v.<br><br>FLAMBEAU MINING COMPANY,<br><br>        Defendant. | Case No. 11-cv-45 |

**DEFENDANT FLAMBEAU MINING COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' IMPROPER SUMMARY JUDGMENT FILINGS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL PROPOSED FINDINGS OF FACT**

## INTRODUCTION

On the same day that Magistrate Crocker sanctioned Plaintiffs for the manner in which they accessed FMC's property during discovery, Plaintiffs inappropriately filed summary judgment documents. Specifically, Plaintiffs filed "corrected versions" of their summary judgment response materials one day after their filing deadline without seeking leave of Court. Such "corrected" versions made significant substantive changes to Plaintiffs' summary judgment materials. Then, less than a week later, Plaintiffs premised summary judgment reply brief arguments on newly introduced facts (which are demonstrably inaccurate) to which FMC never had an opportunity to respond.

1

Plaintiffs' failure to abide by the Court's deadlines and procedures should not be condoned. The Court should strike Plaintiffs' post-deadline summary judgment response filings as well as all references to the newly proposed facts in Plaintiffs' summary judgment reply materials. If the Court denies the latter, FMC should receive the opportunity to respond to the new factual assertions and introduce related briefing.

## BACKGROUND

Both parties have moved for summary judgment in this case. Pursuant to the Court's order, Plaintiffs were required to respond to FMC's motion for summary judgment by December 12, 2011 (D.E. No. 57).[1] At 11:59 p.m. on December 12, 2011, Plaintiffs completed what purported to be their summary judgment response filing (D.E. No. 97).

However, one day after the summary judgment deadline, at approximately 4:45 p.m., Plaintiffs' filed "corrected" versions of the summary judgment response filings. (*See* D.E. Nos. 99-101). Such "corrected" versions were filed without leave of Court and did not contain mere typographical revisions. Rather, these "corrected" versions introduced substantive changes, including:

- Over 30 new references to factual assertions on pages 57 through 86 of Plaintiffs' response brief. (*Compare* D.E. No. 97 at pp. 58-86 *with* D.E. No. 99 at pp. 57-86).

---

[1] "D.E. No. ___" refers to the number of the docketed entry.

2

- A 180-degree change to Additional Proposed Finding of Fact No. 295, fundamentally altering the meaning of that proposed finding of fact.  (*Compare* D.E. No. 93 at p. 13, ¶ 236 *with* D.E. No. 100 at p. 13, ¶ 295).
- New substantive language in both Additional Proposed Finding of Fact 325 and 326.  (*Compare* D.E. No. 93 at p. 19, ¶¶ 266-267 *with* D.E. No. 100 at p. 19, ¶¶ 325-26).
- A table of contents in Plaintiffs' brief.

Despite making all of these changes, Plaintiffs retained the same date on this filing as Plaintiffs had used the night before:  December 12, 2011.

Approximately one week later, Plaintiffs filed reply materials in support of their own motion for summary judgment.  Among such reply materials was a motion for leave to file supplemental proposed findings of fact.  (D.E. No. 102).  Although the Court had not yet addressed their motion for leave, Plaintiffs referred to such newly proposed facts throughout their summary judgment filings.  Indeed, they referred to the new proposed findings of fact at least 3 times in their reply brief (*see* D.E. No. 104 at pp. 17, 50, 57) and at least 25 times in reply to defendant's responses on findings of fact.  (*See, e.g.*, D.E. No. 105 at ¶¶ 122, 165-167, 170).

Plaintiffs have used the newly proposed findings to argue, among other things, that the Wisconsin Department of Natural Resources ("WDNR") "proposed" that "Stream C"—allegedly running from the area of the Biofilter to

3

the Flambeau River—was "impaired."  (D.E. No. 104 at p. 50).   Because the newly proposed findings were offered at the reply stage, FMC did not have the opportunity to identify that this is a blatant misrepresentation.

First, FMC did not have a chance to clarify that the WDNR materials used by Plaintiffs are not accurate, and had been changed by WDNR in advance of its formal public announcement.  (Speerschneider Dec., ¶¶ 11-12, Exs. D, E).  The correct WDNR materials indicate that the length of Stream C is 0.39 miles, not 0.51 Miles, and that "Stream C" does not exist above Copper Park Lane (the area near the Biofilter at issue in this case).  *Id.*

Second, FMC did not have the chance to reference WDNR's statements provided along with its public announcement (and available to Plaintiffs at the time of the filing) indicating that the area above Copper Park Lane is a "wetland," and that WDNR could not make a finding that the "wetland" area above Copper Park Lane is "impaired." (Speerschneider Dec., ¶ 7, Ex. B).

Thus, the timing of Plaintiffs' filings prevented FMC from explaining that the announcement in question actually supports FMC's position that the Biofilter discharges to a wetland, not to Stream C, as alleged by Plaintiffs.

FMC now brings a Motion to Strike Plaintiffs' December 13, 2011 summary judgment response filings, as well as any and all references to findings of fact allegedly based upon WDNR's December 2011 website content regarding Stream C in Plaintiffs' December 19, 2011 summary judgment reply filings.

**ARGUMENT**

I. **PLAINTIFFS' POST-DEADLINE SUMMARY JUDGMENT RESPONSE FILINGS SHOULD BE STRICKEN.**

It is axiomatic that a party may not file a summary judgment brief or materials after its deadline for doing so without leave of court. Here, that is exactly what Plaintiffs have done. When their deadline for filing the summary judgment response materials arrived, Plaintiffs simply filed what they had completed. Then, they filed significantly-revised versions of such materials as "corrected" copies the next day. Among other things, such "corrected" copies included new references to statements of fact on approximately 30 pages. At the time these "corrected" versions were filed, FMC had already begun preparing its reply materials. Plaintiffs should not be allowed to benefit from their avoidance of the scheduled deadlines.

II. **PLAINTIFFS' REFERENCES TO NEW FACTS AT THE SUMMARY JUDGMENT REPLY STAGE SHOULD BE STRICKEN.**

Likewise, Plaintiffs should not be permitted to introduce newly proposed facts and arguments at the reply stage. Again and again, courts have rejected litigants' attempts to introduce new facts and arguments at the reply stage. *See Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir. 1989) (reiterating general Seventh Circuit precedent that "it is well-settled that new arguments [and facts] cannot be made for the first time in reply"); *Dietrich v. Trek Bicycle Corp.*, 297 F.

Supp. 2d 1122, 1128 (W.D. Wis. 2003) (striking portions of reply brief that raised new arguments for the first time); *Eby-Brown Co. LLC. v. Wisconsin Dept. of Agr., Trade & Consumer Prot.*, 213 F. Supp. 2d 993, 1011 (W.D. Wis. 2001) (refusing to consider argument raised for the first time in a reply brief); *Bell v. Addus Healthcare, Inc.*, No. C06-5188RJB, 2007 WL 2463303, *7 (W.D. Wash. Aug. 27, 2007)(striking facts raised in a reply brief for the first time because "it is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper")(internal quotation omitted); *Pacquiao v. Mayweather*, No. 2:09-CV-2448-LRH-RJJ, 2010 WL 3271961, *1 (D. Nev. Aug. 13, 2010) (granting motion to strike because a party may not raise a new argument or proffer new evidence in a reply brief).

Here, Plaintiffs have done just that. They have introduced new facts and new arguments at the reply stage as to the significance of WDNR website content regarding Stream C. (D.E. No. 104 at p. 17, 50, 57). At the time Plaintiffs referenced these "facts" in their summary judgment materials, Plaintiffs had not in fact received leave from the Court to do so. This alone provides reason to strike all references to such materials.

Further, Plaintiffs should not be able to use their late introduction of proposed findings to hide the fact that they are wholly misrepresenting WDNR's December 20, 2011 public announcement regarding Stream C. In this instance, Plaintiffs are contending, among other things, that WDNR recently "proposed to list the full 0.5 mile length of Stream C, from near Highway 27 to the Flambeau

6

river, as 'impaired' for acute copper and zinc toxicity." (D.E. No. 104 at p. 50). This is inaccurate on several levels.

First, as noted above, the WDNR materials used by Plaintiffs to support its new findings of fact are inaccurate. The correct, publicly-announced materials show that "Stream C" does not exist above Copper Park Lane (the area near the Biofilter at issue in this case). (Speerschneider Dec., ¶¶ 7, 11-12, Exs. B, D, E). In Plaintiffs' haste to submit materials that they believed supported their argument, Plaintiffs submitted documents that did not accurately represent WDNR's position. Plaintiffs' inaccurate materials should not go unchallenged simply because they were filed at the reply stage.

Even more importantly, contrary to Plaintiffs' argument, WDNR expressly stated on its website at the time of Plaintiffs' filing that it was <u>not</u> finding that a stream existed above Copper Park Lane (in the area adjacent to the Biofilter at issue), or that such area above Copper Park Lane was "impaired." (Speerschneider Dec., ¶ 7, Ex. B). In fact, WDNR expressly stated that the area above Copper Park Lane (the area adjacent to the Biofiter at issue in this case) constitutes a "wetland," and that WDNR has no data or test results from which to conclude that such "wetland" was "impaired." (Speerschneider Dec., ¶ 7, Ex. B).

Thus, contrary to Plaintiffs' contention, WDNR's December 20, 2011 announcement actually supports FMC's argument that the Biofilter discharges to a wetland and that Stream C does not exist in the area where the Biofilter discharges. Plaintiffs should not be permitted to escape these implications simply

7

because they first raised the pertinent facts and arguments at the reply stage. Allowing Plaintiffs' argument to come in at this late stage would be prejudicial to FMC.

### III. PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL PROPOSED FINDINGS OF FACT SHOULD BE DENIED.

For the reasons stated above, Plaintiffs' Motion for Leave to File Supplemental Proposed Findings of Fact (D.E. No. 102) should be denied. While Plaintiffs contend that "there is no undue prejudice to the Defendant because it would be able to respond to the five additional proposed findings of fact without a delay in the trial schedule," Plaintiffs ignore that the parties would also need to engage in "re-briefing" on several arguments (*see* D.E. No. 102 at p. 2). This certainly constitutes prejudice. If, however, the Court were to allow Plaintiffs' newly proposed facts to come in, FMC requests that the Court set a briefing schedule.

### CONCLUSION

For the reasons stated above, Plaintiffs' December 13, 2011 summary judgment response filings should be stricken in their entirety, as should any and all references to findings of fact allegedly based upon WDNR's website content regarding Stream C in Plaintiffs' December 19, 2011 summary judgment reply filings. In addition, Plaintiffs' Motion for Leave to File Supplemental Proposed Findings of Fact (D.E. No. 102) should be denied. Alternatively, if the Court were

to grant Plaintiffs' Motion for Leave, FMC requests the opportunity to respond to Plaintiffs' belatedly-submitted facts and submit additional briefing.

Respectfully submitted this 9th day of January, 2012.

**DEWITT ROSS & STEVENS S.C.**

By: */s/ Harry E. Van Camp*
Harry E. Van Camp (#1018568)
Henry J. Handzel, Jr. (#1014587)
Timm P. Speerschneider (#1012525)
Two East Mifflin Street, Suite 600
Madison, WI 53703-2865
608-255-8891
**ATTORNEYS FOR DEFENDANT,
FLAMBEAU MINING COMPANY**