UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN RESOURCES
PROTECTION COUNCIL, CENTER
FOR BIOLOGICAL DIVERSITY,
AND LAURA GAUGER,

        Plaintiffs,

    v.

FLAMBEAU MINING COMPANY,

        Defendant.

Case No. 11-cv-45

---

**DEFENDANT, FLAMBEAU MINING COMPANY'S, BRIEF IN
SUPPORT OF MOTION TO DISMISS FOR FAILURE
TO JOIN AN INDISPENSABLE PARTY**

---

**INTRODUCTION**

Plaintiffs cannot escape the fact that the Wisconsin Department of Natural Resources ("WDNR") is an indispensable party in this litigation. Among other things, they offer no basis to dispute that:

- For nearly 20 years, WDNR has issued <u>every</u> WPDES storm water permit in the State of Wisconsin under the WDNR regulation that Plaintiffs believe was not correctly promulgated for Clean Water Act purposes.

- Approximately 5,700 industrial storm water permit holders would instantly be operating without a valid permit if the Court agrees with Plaintiffs' position that Wisconsin's sole WPDES storm water regulation—NR ch. 216—is invalid for Clean Water Act purposes.

1

- WDNR could no longer rely upon Wis. Stat. § 283.51—a provision that WDNR uses for handling WPDES storm water issues at mining facilities—if the Court agrees with Plaintiffs' position that Wis. Stat. 283.51 is likewise invalid for Clean Water Act purposes.

- Plaintiffs have an alternative avenue for pursuing any grievances as to Wisconsin's WPDES program: they may raise the issue with the U.S. E.P.A. or attempt to sue Wisconsin in a declaratory judgment action pursuant to Wis. Stat. § 227.40.

- Plaintiffs are already challenging the WPDES operational practices at issue in this lawsuit with U.S. E.P.A.

Ultimately, Plaintiffs cannot continue to put that their hands over their eyes and pretend as though their citizen suit against FMC is anything but an attack on Wisconsin's entire delegated program under the Clean Water Act ("CWA"). The proper recourse is to dismiss this case and require Plaintiffs to bring their case in another manner, as they already appear to be doing.

## ARGUMENT

### I.  THE WDNR IS A REQUIRED PARTY UNDER RULE 19(a)(1).

Plaintiffs do not dispute the central underpinnings of FMC's argument that WDNR is a required party. Among other things, they do not dispute that a court decision that NR ch. 216 has never been formally approved by U.S. E.P.A. would instantly invalidate industrial storm water permits held by nearly 5,700 companies.

2

In addition, they do not offer any substance to dispute that a court decision finding that Wis. Stat. § 283.51 was invalid for Clean Water Act purposes would mean that the State could no longer rely upon a key tool for regulating storm water at Wisconsin mines.

Recognizing the implications of these concessions, Plaintiffs resort to the "kitchen sink" approach in hopes of convincing the Court that their unprecedented attack on Wisconsin's WPDES structure is just "business as usual." None of their arguments pass muster.

### A. WDNR Clearly Has An Interest In The Validity Of Its Fully Delegated Permit Program Under The Clean Water Act.

First, Plaintiffs brazenly contend that Wisconsin DNR has no real interest in whether permits issued under its fully-delegated NPDES program entitle their permit-holders to the permit shield under the Clean Water Act. (Pl. Brief at 5-6). As Plaintiffs are well aware, however, Wisconsin has been delegated authority by the U.S. E.P.A. under the Clean Water Act to operate a permit program. If the State's WPDES storm water program is deemed invalidly promulgated—rendering thousands of Wisconsin permits ineffectual—it is hard to imagine how the State of Wisconsin could lack an interest in that outcome.

### B. Plaintiffs Are Not Targeting FMC, But Rather The Wisconsin WPDES Regulatory Scheme That Afforded FMC Permit Coverage.

Second, Plaintiffs argue that they are only targeting FMC, not WDNR.[1] (Pl. Brief at 6-7). However, as explained at length in FMC's principal brief, Plaintiffs' court filings repeatedly demonstrate that they are attacking WDNR's program. (FMC Brief at 3-6). For example, in their January 24, 2012 response to WDNR's amicus submission, Plaintiffs contend that WDNR has "tenuous" "legal authorities to implement the CWA in Wisconsin." (Plaintiffs' Opposition to the State of Wisconsin's Motion for Leave to File an Amicus Curiae Brief, p. 8 n.2, Dkt. 118). Moreover, they argue: "the State's position on the use of state-law mining permits to regulate point-source pollutant discharges is flatly inconsistent with the plain language of the CWA as interpreted by . . . the U.S. E.P.A." *Id.*[2]

Plaintiffs principally contend that, because NR ch. 216 was allegedly not formally approved by U.S. E.P.A, NR ch. 216 does not comprise part of Wisconsin's fully delegated program under the Clean Water Act. (*See* FMC Brief at 3-6); *see also* Pl. Brief at 3, 17. Therefore, according to Plaintiffs, any permit issued pursuant to NR ch. 216—for example, FMC's permit (issued pursuant to

---

[1] Plaintiffs' preposterous claim that "[b]oth FMC and WDNR acknowledge that FMC does not have a permit issued pursuant to 33 U.S.C. § 1342" (Pl. Brief at 2) does not square with a single statement made by FMC or WDNR before, during, or after summary judgment.

[2] In their response brief, Plaintiffs repeatedly misrepresent FMC's permit as purely a state-law mining permit. However, as Plaintiffs know, WDNR consistently testified that FMC's permit was issued pursuant to NR § 216.21 of Wisconsin's WPDES regulatory framework. Plaintiffs have resorted to attacking NR § 216 as not being formally approved by U.S. E.P.A. (and allegedly ineffectual for Clean Water Act purposes) specifically because FMC's permit was issued under Wisconsin's exclusive WPDES storm water regulatory framework.

4

NR § 216.21)—carries no effect under the Clean Water Act. *See id.* This theory runs counter to not only the understanding of WDNR, but of U.S. E.P.A. as well. (See Defendant Flambeau Mining Company's Reply Brief In Support Of Summary Judgment, pp. 3-6, Dkt. 111).

If Plaintiffs are correct that NR ch. 216 is not part of Wisconsin's EPA-approved NPDES program, someone will need to deliver that news to WDNR. WDNR's website describes its program as follows:

> To meet the requirements of the federal Clean Water Act, DNR developed the Wisconsin Pollutant Discharge Elimination System (WPDES) Storm Water Discharge Permit Program which is administered under the authority of ch. NR 216, Wis. Adm. Code. The WPDES Storm Water Program regulates the discharges of storm water in Wisconsin from three potential sources: Construction Sites, Industrial facilities, Municipal separate storm sewer system.

*See* DNR, *Storm Water Runoff Regulation* (last visited April 2, 2012), https://dnr.wi.gov/topic/stormwater/learn_more/regulations.html

Likewise, if Plaintiffs are correct that WDNR could not rely upon Wis. Stat. § 283.51 of Wisconsin's storm water statute to carry out its approved WPDES program, someone will need to notify the state legislature. Wisconsin's WPDES statute expressly incorporates the State's storm water provisions into the WPDES statute. *See,* Wis. Stat. § 283.31(1).

Perhaps most important, if Plaintiffs are correct that NR ch. 216 and Wis. Stat. § 283.51 are not part of Wisconsin's EPA-approved NPDES storm water program, someone will need to notify U.S. E.P.A. The U.S. E.P.A. has repeatedly reviewed Wisconsin's WDPES storm water regulatory scheme, has expressed its approval for that scheme in the Federal Register, and has allowed Wisconsin to

5

rely upon its WPDES storm water regulations and statutes for nearly 20 years. (*See* Defendant Flambeau Mining Company's Reply Brief In Support Of Summary Judgment, pp. 3-6, Dkt. 111).

Obviously, Plaintiffs' real argument is not that FMC lacks a permit issued pursuant to Wisconsin's EPA-approved NPDES program, but rather that Wisconsin's EPA-approved NPDES storm water program was somehow improperly promulgated. Clearly, WDNR is the real party of interest in this case.

### C. Plaintiffs Are Not Bringing An Ordinary Clean Water Act Citizen Suit.

Next, Plaintiffs argue that "[c]ourts have . . . specifically held in Clean Water enforcement actions that state and federal regulatory agencies are not necessary, let alone indispensable, parties to citizen suits seeking to enforce permitting and other federal environmental requirements against alleged violators." (Pl. Brief at 8-9). However, all cases cited by Plaintiffs involve situations where an agency chose not to regulate the company through a state NPDES permit. *See id.* Unlike those cases, here the relevant agency did issue a state NPDES permit, and Plaintiffs are challenging the regulatory framework through which WDNR did so. They claim that the regulation relied upon by WDNR to issue WPDES permits to companies in Wisconsin like FMC—NR ch. 216—as well as a separate segment of Wisconsin's WPDES law—Wis. Stat. § 283.51—were invalidly promulgated or otherwise violate the Clean Water Act.

6

Therefore, unlike Plaintiffs' cited cases, the relevant state agency in this case has an intimate interest in this litigation.

### D. Plaintiffs Have Not Cited A Single CWA Case In Which A Court First Analyzed Whether A State NPDES Program Was Correctly Promulgated.

Fourth, Plaintiffs assert that it is "common" for courts to "determine whether specific state agency actions or regulations" are "covered by U.S. EPA approvals" in "federal environmental enforcement cases such as this one." (Pl. Brief at 4). However, Plaintiffs have not cited a single Clean Water Act citizen suit anywhere in the country in which a court first analyzed whether a state NPDES program was correctly promulgated. Moreover, Plaintiffs do not cite a single environmental case of any kind in which a Court held a permit-holder liable because the state allegedly did something improper in promulgating the rule through which the permit was issued.

### E. WDNR Could Not Have Been Expected To Intervene In A CWA Citizen Suit With Its Sovereign Immunity At Stake.

Fifth, Plaintiffs contend that WDNR is not a required party because it did not seek to intervene in this case. However, Plaintiffs have not identified a single Clean Water Act case in which a Court has found that such an intervention would be appropriate. This is not surprising. As previously explained, the Clean Water Act does not contemplate hailing state agencies into federal court to defend the validity of their NPDES permit program. Other remedies are designed for this. Likewise, the Clean Water Act does not permit a citizen to "bait" a government

7

agency to defend the integrity of its NPDES program by suing an individual permit-holder. *See* 33 U.S.C. § 1365; *see also Legal Envtl. Assistance Found., Inc. v. Pegues*, 717 F. Supp. 784, 789 (M.D. Ala. 1989), aff'd 904 F.2d 640 (11th Cir. 1990) (recognizing that it is inappropriate to challenge a state-approved NPDES permit program through a Clean Water Act citizen suit because "it is the duty of the [EPA] Administrator to supervise the state program.").

Equally as important, courts have stated that a decision by a government agency or other party not to intervene should not tilt the Rule 19 analysis where intervention could have the effect of waiving sovereign immunity. *Pit River Home & Agric. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1099, 1102 (9th Cir. 1994) (acknowledging that under Rule 19, a refusal to intervene does not suggest that a non-party lacks an interest in the litigation where doing so would amount to a waiver of sovereign immunity); *see also Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991); *N. Arapaho Tribe v. Harnsberger*, 660 F. Supp. 2d 1264, 1281 (D. Wyo. 2009). Intervention by WDNR would have required just such a compromise of sovereign immunity here.

### F. A Single Permit Holder Does Not Adequately Represent The Interests Of A State Government Agency.

Finally, Plaintiffs contend WDNR is not a required party because FMC—a private company—is allegedly adequately representing the interests of the State of Wisconsin. Courts have held that this type of argument is not even appropriate to

consider as part of the Rule 19(a) analysis. *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 668-70 (6th Cir. 2004).

However, even assuming Plaintiffs' argument is appropriate in the context of Rule 19(a), it still fails. Plaintiffs' argument hinges largely on vague assertions that FMC and WDNR have cooperated as to certain court submissions. (Pl. Brief at 10-11). This hardly suggests that WDNR and FMC have identical interests. Most notably, Plaintiffs provide no indication of how an individual permit-holder could share the exact same interests as a government agency that issues such permits.

Further, various cases have concluded that a Court should be reticent to find that two parties have identical interests because—even where such interests may align on the merits—such interests may differ as to overall legal strategy. *See e.g., Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1497 (D.C. 1997)("even were the department vigorously to represent the Delawares . . . in the district court, the Department might decide not to appeal any unfavorable decision. As a non-party, the Delawares would have no right to appeal, regardless of whether the Department's decision was based on its view of the merits or on other considerations").

## II. THE WDNR CANNOT BE JOINED UNDER RULE 19.

Since the WDNR is a required party, the Court must next consider whether the WDNR's joinder is feasible. *See* Fed. R. Civ. P. 19. In its principal brief, FMC explained that joinder is not feasible for several reasons. (FMC Brief at 10-

9

15). First, the CWA does not permit citizen suits against state agencies as to the manner in which they are operating their state NPDES programs. *Id.* Second, Plaintiffs' Notice of Intent failed to apprise WDNR of their legal challenge. *Id.* Third, the WDNR has not waived its sovereign immunity. *Id.*

Plaintiffs do not attempt to contest any of these arguments. On this basis alone, they have waived any argument that WDNR can be joined in this action.

Plaintiffs' half-hearted argument that the Court could opt to join the Secretary of WDNR easily fails. (Pl. Brief at 12-13). Plaintiffs do not offer any explanation as to how the Court could join the Secretary in a citizen suit that is not permitted to challenge the validity of a state NPDES law (and for which the Secretary has not received a Notice of Intent challenging the legitimacy of the State's program). *Id.*

### III. THE COURT SHOULD DISMISS THIS CASE.

All four factors in Rule 19(b) weigh in favor of dismissing the case. *See* Fed. R. Civ. P. 19(b). Plaintiffs' response brief entirely fails to show how this case can continue in WDNR's absence.

### A. A Judgment Entered In WDNR's Absence Will Prejudice WDNR.

As explained throughout FMC's briefs, a decision against FMC would prejudice the WDNR because it would invalidate its entire storm water permit program.

Aware of the weakness of their arguments on the merits, Plaintiffs resort to the contention that FMC waited too long before bringing this motion. (Pl. Brief at 14-15). As Plaintiffs know, however, a dispositive motion as to subject matter jurisdiction may be raised at any time. *Kimball v. Florida Bar*, 537 F.2d 1305, 1306-07 (5th Cir. 1976)(*citing Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-12 (1968) ("A party does not waive the defense of failure to join an indispensable party by neglecting to raise it; an objection can be raised at any time even by a reviewing court on its own motion.").

Moreover, FMC's motion is newly ripe. Plaintiffs first began challenging the validity of NR ch. 216 and Wis. Stat. § 283.51 at summary judgment just a few months before FMC's motion. *See e.g.,* Plaintiff's Response to Defendant's Motion for Summary Judgment at 19-25, 30 n.17, Dkt. 99  Prior to that, Plaintiffs had relied upon an undeveloped theory that FMC simply lacked a permit under the Clean Water Act. (*See* Complaint, p. 10 ¶ 46, Dkt. 1). Further, Plaintiffs most clearly articulated their attack on NR ch. 216 in their Motion in Limine filed March 2, 2012. Any argument that FMC has waited too long cannot survive close scrutiny.

Notably, both cases cited by Plaintiffs for the proposition that a party cannot wait too long to bring a Rule 19 motion involved situations where the movant waited several years before bringing the motion. *See, Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 491 (8th Cir. 2006)(ruling against a Rule 19 motion where a party waited more than six years to bring a Rule

19 motion after the basis for that motion became apparent and only following adverse rulings); *Garrett v. Albright*, No. 06-cv-4137, 2008 WL 920310, *1, *4 (W.D. Mo. April 1, 2008)(questioning whether a party could wait several years to raise a Rule 19 issue as to its wholly-owned companies before deciding against the Rule 19 motion on other grounds). In the present case, FMC brought its Rule 19 motion within a few months of receiving <u>any</u> information as to Plaintiffs' arguments, and only a week after Plaintiffs' Motion in Limine best crystallized their arguments. In addition, unlike the cases cited above, FMC brought its motion before the Court had made any substantive rulings.

Even assuming that FMC's Rule 19 motion could have been brought earlier, the Court must consider the merits of the motion given the profound implications for the State of Wisconsin. *Le Beau v. Libby-Owens-Ford Co.*, 484 F.2d 798, 800 (7th Cir. 1973) ("The application of Rule 19, of course, turns on the facts of each case."). Unlike other cases cited by Plaintiff, the present case does not have ramifications for simply a few private third-parties. It implicates thousands of permit-holders throughout the State of Wisconsin and the state agency that regulates them.

### B. The Prejudice To WDNR Cannot Be Lessened Or Avoided.

The Court cannot limit or shape the relief in this case to avoid a decision over either the validity of the WPDES program or the WDNR's interpretation of its authority under that program. As explained in Defendant's principal brief, both of Plaintiffs' central arguments—that NR ch. 216 was never formally approved by

12

U.S. E.P.A. and that the WDNR permit adjudication process did not meet the notice, hearing, and approval requirements mandated by the CWA—are premised on the invalidity of Wisconsin's WPDES program.

In their response brief, Plaintiffs suggest in passing that the Court could simply direct its ruling to Defendant FMC. (Pl. Brief at 15-16). However, Plaintiffs offer no detail as to how the Court could rule that NR ch. 216 was not formally approved by U.S. E.P.A., or that Wis. Stat. § 283.51 is invalid, without having the far reaching effect of invalidating Wisconsin's entire WPDES storm water regulatory scheme.

### C. A Judgment Rendered In WDNR's Absence Will Not Be Adequate.

In its principal brief, FMC explained that a judgment rendered in WDNR's absence will not be adequate because it will induce "multiple litigation." (FMC Brief at 16-17). Put simply, a ruling in favor of Plaintiff would expose every other current holder of a storm water permit in Wisconsin (approximately 5,700 industrial facilities) to the same back-door attack that Plaintiffs are trying to advance here. *Id.* Plaintiffs' response brief does not address this point and offers no reason for the Court to conclude otherwise. (Pl. Brief at 13-14).

### D. Plaintiffs Will Have Adequate Alternative Remedies If The Action Is Dismissed.

The final consideration is whether Plaintiffs have an adequate alternative remedy to address their concerns. *See Reliance Ins. Co. v. Wis. Natural Gas Co.*, 60 F.R.D. 429 (E.D. Wis. 1973). The Eastern District of Wisconsin has identified

this fourth criterion as "perhaps the most important factor specified in Rule 19(b)." *Id*. at 432.

In its principal brief, FMC explained that Plaintiffs should raise the instant challenges to WDNR's WPDES program in a different way. (FMC Brief at 17-18). Under the CWA, Plaintiffs may bring suit against the administrator of the U.S. E.P.A. if they believe that the U.S. E.P.A. is refusing to address a state NPDES program that is allegedly operating in a manner that violates the CWA. *Id.*; *see also,* 33 U.S.C. § 1369; *see also Legal Envtl. Assistance Found.*, 717 F. Supp. at 789. Alternatively, under Wisconsin law, Plaintiffs may attempt to challenge Wisconsin's regulatory scheme through a declaratory judgment action under Wis. Stat. § 227.40.

FMC also provided correspondence evidencing that Plaintiffs are <u>in fact</u> raising the very same arguments at issue here with the U.S. E.P.A. (FMC. Supp. Brief at 1-3, Dkt. 127; Affidavit of Henry J. Handzel, Ex. A, Dkt. 128-1). However, in such correspondence, rather than blaming FMC for having an improper permit, Plaintiffs claim that the State of Wisconsin is operating an improper permit program. *Id.*

In its response brief, Plaintiffs <u>admit</u> that they are currently pursuing their challenges to NR ch. 216 and Wis. Stat. 283 (the same claims at issue here) with the U.S. E.P.A. (Pl. Brief at 18). Despite this substantial admission, they contend that the instant lawsuit should continue because they are seeking relief only from FMC, not WDNR. *Id.* at 13-14. That is the whole problem. Plaintiffs are seeking

14

to hold FMC—a single permit holder—responsible for supposed problems in the promulgation of Wisconsin's WPDES program. Plaintiffs have gone far afield from a CWA citizen suit, and the case must be dismissed in the absence of WDNR.

## CONCLUSION

For the reasons stated above, the Court should grant Defendant, Flambeau Mining Company's, Motion to Dismiss for Failure to Join an Indispensable Party.

Respectfully submitted this 2nd day of April, 2012.

**DEWITT ROSS & STEVENS S.C.**

By: */s/ Harry E. Van Camp*
Harry E. Van Camp (#1018568)
Henry J. Handzel, Jr. (#1014587)
Timm P. Speerschneider (#1012525)
Two East Mifflin Street, Suite 600
Madison, WI 53703-2865
608-255-8891
**ATTORNEYS FOR DEFENDANT,
FLAMBEAU MINING COMPANY**