UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Wisconsin Resources Protection
Council, Center for Biological
Diversity, and Laura Gauger,

       Plaintiffs,                             Case No:  11-cv-45

     v.

Flambeau Mining Company,

       Defendant.

**DECLARATION OF JAMES B. HUTCHISON IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE REGARDING THE U.S. ARMY CORPS OF ENGINEERS' PRELIMINARY JURISDICTIONAL DETERMINATION**

      James B. Hutchison declares as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

      1.    I make these statements based on personal knowledge and experience.

**BACKGROUND, EXPERIENCE AND EXPERTISE**

      2.    I was employed by Foth Infrastructure & Environment and Foth & Van Dyke (collectively "Foth") as a Lead Environmental Engineer from 1990 through January 24, 2012.  I currently work for Foth as an independent contractor performing duties of a Lead Environmental Engineer.

      3.    I hold a Master's Degree in Civil and Environmental Engineering from the University of Wisconsin-Madison (1986) and a Bachelor's Degree in Civil Engineering from the University of Wisconsin-Platteville (1979).

      4.    I am a registered Professional Engineer by the State of Wisconsin (E-22484).  I have over 20 years of professional experience and expertise in permitting

1

complex metallic mining projects. I have managed projects integrating environmental permitting, mine closure, engineering feasibility studies, site remediation, and environmental impact analysis.

5. I have continuously worked on the Flambeau Mine project since 1990. I worked as Project Manager for environmental permitting during the 1990s and have worked as Lead Engineer on site projects thereafter. Foth has acted as a consultant to Flambeau Mining Company ("FMC") during this timeframe. My professional work experience at the Flambeau mine site has included, among other things, developing and submitting regulatory-required documents, evaluating environmental reclamation, performing remediation activities, and monitoring related to soils and both surface water and groundwater hydrology, including but not limited to, such activities related to the Industrial Outlot.

6. I previously signed three Declarations for this litigation.

7. Beginning as early as the fall of 2009, Foth was retained by FMC to develop a plan to improve storm water management onsite including the use of infiltration basins in order to eliminate the biofilter.

8. On behalf of FMC, Foth developed a conceptual plan for a new storm water management program that was submitted to the Wisconsin Department of Natural Resources ("WDNR") by letter from Timm P. Speerschneider of DeWitt Ross & Stevens dated August 30, 2010.

9. After significant consultation with WDNR, Foth finalized the conceptual plan for storm water management, which was called the Copper Park Business and Recreation Area Work Plan ("Work Plan") and, on behalf of FMC, submitted it to the WDNR on May 17, 2011.

10. The Work Plan proposed changes to the Best Management Practices used to manage storm water in the Industrial Outlot at the Flambeau Mine Site including: removal and disposal of sediment from the biofilter, conversion of the biofilter into an infiltration basin, creation of two additional infiltration basins to improve surface water management, and wetland restoration activities.

11. The Work Plan proposed the creation of an earthen berm ("berm") to direct water exiting the culvert under the west side of State Highway 27 to the south. The berm is approximately 450 feet northeast of the former overflow point of the Biofilter. It is located within an unidentified delineated wetland to the north of the 1.24-acre wetland designated as W-7. Attached as Exhibit A is a true and accurate copy of a map (identified as Figure 4. Field Delineated Wetlands, Flambeau Mine Site – Industrial Outlot) from the Wetland Delineation Report prepared by Stantec that is attached as Appendix A to the Work Plan. On Exhibit A, I labeled the location of the newly constructed berm as well as the former biofilter.

12. The Work Plan was reviewed and approved by WDNR. It was also reviewed by the U.S. Army Corps of Engineers ("Corps") because of the potential for a small amount (less than 500 square feet) of fill being placed in the wetland to create the berm.

13. As part of its review, the Corps made a preliminary jurisdictional determination regarding .01 acres (435.6 square feet) of wetland in the location where the berm was to be constructed (See DKT# 107-3; page 3).

14. The Work Plan has been implemented and approximately 400 square feet of fill was placed in the wetland to create the berm.

James B. Hutchison

Date: May 7, 2012

4