IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN RESOURCES PROTECTION
COUNCIL, CENTER FOR BIOLOGICAL
DIVERSITY and LAURA GAUGER,

                                                   ORDER

        Plaintiffs,

                                                  11-cv-45-bbc

   v.

FLAMBEAU MINING COMPANY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this action brought under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a)(1), plaintiffs Wisconsin Resources Protection Council, Center for Biological Diversity and Laura Gauger contend that defendant Flambeau Mining Company discharged pollutants into navigable waters without a permit issued under the Act. A court trial to resolve the remaining issues is scheduled for May 21, 2012 and the parties' motions in limine are now before the court.

### A. Plaintiffs' Motions in Limine

1. Motion to exclude evidence that wetlands on defendant's property are not waters of the United States, dkt. #152

     One of the issues remaining in this case is whether defendant's biofilter overflowed into "waters of the United States," 33 U.S.C. § 1362(7), and particularly, whether the

1

biofilter overflowed into Stream C or wetlands that have a significant nexus to navigable waters. In their motion in limine, plaintiffs contend that the Army Corps of Engineers has already made a determination that the wetlands on the mine site are waters of the United States and that, by failing to challenge the Corps' determination, defendant waived any argument that the wetlands are not subject to jurisdiction of the Clean Water Act.

Plaintiffs' motion is based on projects that defendant undertook at the mine site beginning in spring and summer 2011. Sometime in 2011, defendant notified the Wisconsin Department of Natural Resources and Army Corps of Engineers that it planned to modify water drainage courses and discharge fill material into approximately 500 square feet of wetlands on the mine site. In response, the Corps issued a "preliminary jurisdictional determination" indicating that there "may be" waters of the United States, consisting of 0.1 acres of wetlands, in the area affected by defendant's proposed project. Dkt. #107-3. The Corps authorized defendant to place 500 square feet of fill material for the construction of an earthen diversion berm pursuant to a general permit under § 404 of the Clean Water Act. In the authorization letter, the Corps notified defendant that if it disagreed with the Corps' determination regarding whether any area qualified as "waters of the United States," defendant could seek an "approved jurisdictional determination" that could be appealed. The Corps added that if defendant chose to forgo an "approved jurisdictional determination," defendant would be waiving the right to contend later that the area was not jurisdictional waters of the United States. Id. ("[A]ccepting permit authorization . . . constitutes agreement that all wetlands and other water bodies on the site affected in any way by that activity are jurisdictional waters of the United States, and precludes any

2

challenge to such jurisdiction in any administrative or judicial compliance or enforcement action, or in any administrative appeal or in any Federal court. . ."). Defendant elected not to challenge the preliminary determination and proceeded with its fill project.

Plaintiffs contend that defendant's decision not to challenge the preliminary determination bars defendant from arguing that the wetland adjacent to the biofilter is not waters of the United States. This argument is not persuasive. The Corps determined that a 0.1 acre wetland area in which defendant planned to build an earthen berm may qualify as waters of the United States. However, this area is approximately 450 feet northeast of the overflow point from the biofilter and is not the area into which the biofilter overflowed. Aff. of James Hutchinson ¶ 11, dkt. #184. Plaintiffs have not explained why the Corps' determination regarding that area should be applied to all wetlands on the former mine site.

Further, plaintiffs have cited no authority for the proposition that defendant's decision to forgo a challenge to the Corps' preliminary determination operates as s waiver in an enforcement action unrelated to the § 404 permit issued by the Corps, particularly in a case regarding discharges that occurred before the Corps considered whether wetlands on the property were waters covered by the Clean Water Act. Accordingly, I will deny this motion in limine.


2. Motion to exclude legal opinion testimony by defendant's expert witnesses, dkt. #154

Plaintiffs have moved to preclude defendant's expert witnesses, Elizabeth Day and Stephen Donohue, from offering conclusions about the applicable legal standards and the sufficiency of plaintiffs' evidence. I will grant the motion in part and deny it in part.

Defendant's experts may not offer opinions about the applicable legal standards for determining whether Stream C or the wetlands adjacent to the biofilter qualify as waters of the United States, whether a significant nexus exists and whether plaintiffs have satisfied their burden on these issues. It is the court's job to determine the appropriate legal standards and to determine whether plaintiffs have adduced enough evidence to satisfy their legal burden. Thus, the following opinions offered by Day in her expert report, will not be considered at trial:

> Plaintiffs' allegations that pollutants are being discharged to 'navigable waters' (i.e., 'waters of the United States') is unsupported. . . Plaintiffs have not presented evidence that . . . Stream C and/or wetlands to which the biofilter may intermittently discharge are, in fact, 'waters of the United States'. . . Plaintiffs have not established whether Section 402 of the Clean Water Act is applicable to the subject water resources because they have failed to establish that a 'significant nexus' exists between these waters and the nearest traditional navigable waterway.

Dkt. #155-1 at 10.

Plaintiffs also challenge as improper legal conclusions the opinions offered by Donohue in which he critiques the methods and conclusions of plaintiffs' experts. For example, Donohue wrote in his expert report that plaintiffs' experts conclusions "are flawed and based on partial and incomplete evaluation of the data collected by Flambeau and the Wisconsin Department of Natural Resources . . . ." Dkt. #155-2 (Conclusion 6). These are not legal conclusions. It is permissible and appropriate for experts to critique the methods, calculations and conclusions of the opposing party's experts. Therefore, this testimony will not be excluded.

In sum, defendant's experts may offer opinions, based on facts, on the following

topics: whether the biofilter discharges into wetlands or Stream C, whether the wetlands have a physical, biological or chemical connection to Stream C or the Flambeau River and whether plaintiffs' experts applied appropriate methodology and calculations in reaching their conclusions. They may not offer opinions about governing law or whether plaintiffs have satisfied their legal burden.

B. Defendant's Motions in Limine

1. Motion to limit the testimony of John Coleman, dkt. #148

Plaintiffs have disclosed John Coleman as an unretained expert witness who is not required to provide an expert report under Fed. R. Civ. P. 26(a)(2). In their expert disclosures, plaintiffs stated that:

> Dr. John Coleman may testify as to the discharge of pollutants from Defendant's Biofilter to Stream C and the Flambeau River and the past and present physical, chemical, or biological conditions or characteristics of Stream C and the Flambeau River. Dr. Coleman is not required by Rule 26 to prepare an[] expert report. A summary of the facts and opinions to which Dr. Coleman may testify are as follows: (1) The extent to which the soils and waters around and in FMCs Industrial Outlot and Biofilter have been contaminated by historic mining activities, including the leaching or deposition of metals such as copper and zinc; and (2) The nature and extent of Stream C's chemical, physical, and hydrological connection to the Flambeau River.

Dkt. ##171-1, 171-2.

Defendant has moved to limit Coleman's trial testimony in several respects. First, defendant contends that Coleman should be limited to testifying to factual statements made in his previously filed declaration, dkt. #51, because Coleman said during his deposition that he intended to testify only about those matters contained in his declaration. Specifically,

5

Coleman's counsel stated at the deposition that Coleman had agreed to offer testimony limited to the scope of Coleman's declaration, and Coleman stated that he did not "expect to testify to anything beyond what's in that statement."  Dkt. #151-4 at 8, 19.

Defendant contends that because Coleman expressed an unwillingness to testify to any matters outside his previous declaration, plaintiffs are prohibited by Fed. R. Civ. P. 45(c)(3)(B)(ii) from eliciting testimony not covered by the declaration.  However, defendant is not the proper party to invoke Rule 45(c)(3)(B)(ii), which is aimed at protecting the intellectual property of non-party experts.  Advisory Committee Notes, 1991 Amendments, Subdivision(c).  The provision allows a court to quash or modify a subpoena "[t]o protect a person subject to or affected by a subpoena" if the subpoena requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Coleman would be the person affected by plaintiffs' subpoena, not defendant.  Thus, Coleman would be the proper person to seek court protection of any opinion work product he created. Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); Wilson v. O'Brien, 2010 WL 1418401, *2 (N.D. Ill. Apr. 6, 2010) (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.")).

Next, defendant contends that Coleman's testimony should be limited to the issues covered in his declaration and deposition because defendant was not on notice that he would offer any other testimony. Defendant asserts that it "was only able to depose Dr. Coleman regarding the statements in his declaration" and "was left in the dark as to what other alleged facts and opinions Plaintiffs plan to elicit from Dr. Coleman at trial." Dft.'s Br., dkt. #149, at 17. Thus, defendant argues, it would be unfairly prejudiced under Fed. R. Evid. 403. (This argument is separate from defendant's argument under Fed. R. Civ. P. 37(c), discussed below.) This argument is not persuasive. At the time of the deposition, plaintiffs had provided defendant with an expert disclosure stating specifically the topics on which they intended to elicit testimony. Plaintiffs' counsel stated that plaintiffs had no agreement with Coleman that his testimony would be limited to issues covered by his declaration and that plaintiffs intended to elicit testimony from Coleman in accordance with their Rule 26 expert disclosures. Dkt. #151-4 at 51. Additionally, defendant was aware of Coleman's involvement in issues related to the mining site and his various visits to the site. Thus, defendant was not "in the dark" and could have asked Coleman about any of the topics listed in the disclosure. Additionally, although Coleman stated at his deposition that he "intended" to limit the scope of his testimony to the information in his declaration, defendant has cited no authority for the proposition that a deponent, expert or otherwise, can decide independently to limit the scope of his testimony. There is also no indication in the record that Coleman would have refused to answer any questions about topics identified in plaintiffs' disclosure. Plaintiffs should not be penalized because defendant failed to

7

question Coleman adequately.

Defendant also moves under Fed. R. Civ. P. 37(c) to preclude Coleman from testifying about the existence, location and character of the wetland on defendant's property, contending that such testimony was not described in plaintiffs' Rule 26(a) expert disclosures. Rule 26(a)(2)(C) provides that if a party intends to call an unretained expert witness who is not required to provide a written expert report, the party must provide a disclosure stating "the subject matter on which the witness is expected to present evidence . . . and a summary of the facts and opinions to which the witness is expected to testify." Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Defendant contends that because plaintiffs' expert witness disclosure with respect to Coleman made reference only to "Stream C" and not to a "wetland" or the relationship between a "wetland" and Stream C or the Flambeau River, defendant was not prepared to question Coleman at his deposition about a "wetland."

Defendant's argument lacks merit. It was apparent at summary judgment that the meaning of "Stream C" is ambiguous and an issue in dispute. In fact, defendant took the position that "Stream C" could mean a stream, wetland, waterway, drainage pathway, channel or something else, depending on the circumstances. E.g., Op. & Order, dkt. #137, at 18 (noting that although defendant used the label "Stream C" in various documents and reports, defendant maintained that it was actually referring to wetland area around biofilter, not an actual stream); Murphy Dep., dkt. #48, at 132-133 (defendant's reclamation

8

manager testified that notation in her field journal of biofilter's "flow to Stream C" is really shorthand for "wetland area that's adjacent to the biofilter"); Dft.'s PFOF ¶¶ 405, 408, 409, 410, 415, dkt. #81 (referring variously to Stream C as "waterway," "drainageway," "general drainage pathway through a delineated wetland," "headwaters wetland," "low point in the surrounding topography" and "an alleged channel").

In light of the position it took at summary judgment, defendant cannot argue now that it had no idea "Stream C" could be referring to anything but a flowing waterway. Both parties understand that the issue in this case is whether the biofilter discharged into surface waters east of the biofilter, either a wetland or a stream, and whether those waters have a "significant nexus" to a navigable waterway, either a stream or the Flambeau River. Regardless whether the waters are a wetland or a stream, plaintiffs must prove that the waters have a sufficient physical, biological or chemical relationship with a navigable waterway such that they should be subject to jurisdiction of the Clean Water Act. Plaintiffs' disclosure provided defendant sufficient notice that Coleman would be testifying about these waters, regardless what they are called, and whether those waters had a significant relationship with the Flambeau River.

Finally, defendant moves to preclude Coleman from providing any expert testimony on the location of Stream C or whether the wetland east of the biofilter has any impact or significant nexus with Stream C or the Flambeau River, arguing that Coleman's testimony does not meet the standards under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Specifically, defendant contends that because "Dr. Coleman did not even consider or delineate what area constitutes a wetland, and is not qualified to do so, he should

9

not be able to testify as to any purported relationship that such wetland could have with Stream C or the Flambeau River." Dft.'s Br., dkt. #149, at 23. Additionally, defendant points out that Coleman, who earned a Ph.D. in wildlife ecology, does not have degrees or certifications in hydrology, geochemistry, engineering, toxicology or wetlands delineation and that Coleman has made insufficient observations of the mine site to offer reliable opinions.

The problem with defendant's <u>Daubert</u> argument is that defendant does not explain why Coleman's failure or inability to delineate a wetland, or his failure to possess certain degrees or certifications, makes him ineligible to offer expert opinion about whether the surface waters adjacent to the biofilter have a physical, chemical or biological connection with Stream C or the Flambeau River. Plaintiffs have not disclosed Coleman as an expert in wetlands delineation and there is no indication that he intends to provide testimony on that subject. Further, testimony about delineation of the wetland on defendant's property is not the only testimony relevant to the issue of significant nexus. Plaintiffs intend to ask Coleman to provide opinions relevant to his area of expertise as someone possessing an advanced degree in wildlife ecology who has worked for several years as an environmental scientist. Defendant has not shown that Coleman would be unqualified to provide such opinions. Moreover, defendant's arguments about the insufficiency of Coleman's observations go to the weight that should be given to his testimony, not its admissibility. Accordingly, I will deny in full defendant's motion with respect to Coleman's trial testimony.

10

2. Motions to limit the testimony of Craig Roesler, David Chambers and Robert Nauta, dkt. ##169, 173, 177

Defendant has moved to preclude plaintiffs from eliciting any expert testimony at trial from Craig Roesler, David Chambers and Robert Nauta regarding the relationship between the wetlands adjacent to the biofilter, Stream C and the Flambeau River, including whether the wetlands significantly affect the chemical, physical or biological integrity of Stream C or the Flambeau River and whether the biofilter discharges into a "wetland" or a stream. Defendant makes arguments similar to those it made in support of its motion to exclude Dr. Coleman's testimony, including that these experts' testimony should be limited under Rule 37(c) because plaintiffs' Rule 26(a)(2) expert disclosures do not state that they will provide any testimony regarding the "wetlands" and that these experts' opinion on the issues remaining in the case would not satisfy Daubert or Fed. R. Evid. 702. For many of the same reasons already explained, defendant's arguments are not persuasive.

a. Craig Roesler

With respect to its Rule 37(c) argument, defendant asserts that plaintiffs' expert disclosures for Roesler "make absolutely no reference to any impact that the wetland could have on, or association, relationship, or significant nexus that the wetland would have with, Stream C or the Flambeau River." Dft.'s Br., dkt. #170, at 5. However, defendant has read plaintiffs' disclosure too narrowly. Plaintiffs' amended expert disclosure names Roesler as an unretained expert and states that he may testify about the "discharge of pollutants from [defendant's] Biofilter, the nature and toxicity of any such discharges, the transport of such

11

pollutants from the Biofilter to the Flambeau River, and the impact of such discharges on the physical, chemical, or biological integrity of Stream C and the Flambeau River." Dkt. #171-2 at 2-3. This disclosure is sufficient to place defendant on notice that Roesler's testimony could cover the possibility of a nexus between the wetland area near the biofilter Stream C or the Flambeau River and its significance, if any. Plaintiffs' use of the term "Stream C" rather than "wetland" is not dispositive. Further, in the summary judgment opinion I explained that "evidence of downstream pollutant transport, or even *potential* for such transport" is relevant to the significant nexus inquiry. Dkt. #137 at 50 (emphasis in original). Plaintiffs' disclosure states explicitly that Roesler will testify about pollutant transport from the biofilter to the river. Thus, defendant was on notice that Roesler's testimony would be relevant to the relationship between the river and the water east of the biofilter, whether characterized as a wetland or stream.

Additionally, I will not exclude Roesler's testimony under Daubert. Although Roesler is not an official "wetland delineator," defendant has not explained why that matters. Moreover, plaintiffs did not disclose that Roesler would be called to testify about wetland delineation. Roesler is a water resource specialist at the Wisconsin Department of Natural Resources where he has worked for 23 years. He has a bachelors degree in water resource science and biology, a minor in chemistry, a master's degree in natural resources with a focus on the study of fresh water and lakes and a license in hydrology. His primary duties in his current position include conducting lake and stream monitoring, including monitoring at the Flambeau mine site. Roesler's education and experience qualify him to testify about the relationships among the biofilter, its discharges into waters east of the biofilter and the

12

Flambeau River. Defendant is free to question Roesler about his conclusions and methods at trial and defendant's experts may offer a critique of Roesler's calculations. However, I will deny defendant's motion to limit Roesler's testimony.

b. David Chambers

Dr. Chambers is a retained expert for plaintiffs and has filed two expert reports in the case. Defendant contends that Chambers should be precluded from offering any testimony at trial related to the wetland east of the biofilter because his expert report does not include any reference to the wetland or any discussion of the relationship or nexus the wetland has with Stream C or the Flambeau River. Rather, Chambers discusses only discharges from the biofilter into "Stream C." Additionally, defendant contends that because Chambers is not a biologist, limnologist, toxicologist, botanist, hydrologist or wetland scientist and has made no determination of what constitutes Stream C or a wetland, he is not qualified to testify about whether flow from the biofilter will flow into a wetland or Stream C or whether there is a significant nexus between the wetland and the river.

For reasons explained already, I conclude that Chambers' references in his expert report to discharges from the biofilter into "Stream C" provide sufficient notice to defendant that Chambers may testify about discharges from the biofilter into either a stream or a wetland area. Moreover, even if defendant believed legitimately that Chambers intended to testify only about a flowing waterway, Chambers clarified his understanding of "Stream C" during his deposition. In particular, he stated that he was using the term "Stream C" because that was the terminology "used by the company [defendant] and their consultants."

Dkt. #176 at 51-52. He went on to explain that a discharge from the biofilter "leaves the boundary of the basin, which is outlined as a wetland, goes through an area that's not categorized as a wetland and then into a wetland before hitting . . . Stream C." Id. He also stated that "the presence of a wetland doesn't eliminate the presence of a stream. You can have both. In other words, you can have a stream going through a wetland. Just because it goes through a wetland doesn't mean it isn't a stream." Id. Thus, even if Chambers'ss use of the term "Stream C" in his expert report was somehow deficient, it was "substantially justified or [] harmless" for purposes of Rule 37(c).

Additionally, Chambers is qualified to offer opinions regarding the discharges from the biofilter into the surface waters to the east and the relationship between those waters, Stream C and the Flambeau River. Although Chambers is not a wetlands expert and does not hold a degree in a biological science field, he holds a degree in physics, a master's degree in geophysics and a Ph. D. in environmental planning. He is a registered professional geophysicist in California, 35 years of experience in mineral exploration and development and for 20 years has served as a consultant to public interest groups and tribal governments on the environmental impacts of mining, including contamination of surface and groundwater. Chambers has visited the mine site and, before this case commenced, he co-wrote two reports on the Flambeau Mine: "Groundwater and Surface Water Contamination at the Flambeau Mine" (June 5, 2009) and "Recommendations for Changes to Groundwater, Surface Water, and Biomonitoring Specified in the Stipulation Monitoring Plan at the Flambeau Mine" (June 5, 2009). Chambers's educational background and experiences make him qualified to testify as to the issues remaining in this case. Therefore, I will deny

defendant's motion to limit Chambers's trial testimony. To the extent that defendant's experts believe Chambers's methods are inadequate, they may testify accordingly. Defendant is free to make arguments at trial about the weight that should be given to Chambers's opinions and conclusions.

c. Robert Nauta

Finally, I will deny defendant's motion to limit the testimony of Robert Nauta. Nauta is retained as an expert by plaintiffs. He has degrees in geology and hydrogeology and he has provided two expert reports in this case in which he concluded that there is a hydrologic connection between the biofilter, Stream C and the Flambeau River and that copper and zinc discharged from the biofilter reaches the river. Although defendant contends that it had no notice that Nauta would offer opinions or conclusions related to a wetland, Nauta's report and deposition testimony make it clear that plaintiffs intended that Nauta would offer testimony about the water east of the biofilter and the flow path between the biofilter and the Flambeau River, whether it be through a wetland or a stream. As Nauta stated in his deposition, "once [the flow] hits the wetland, it's in the Stream C watershed, and it's going to continue on to Stream C because it's still a downward slope to Stream C." Dkt. #180 at 62-53; 151-52.

Further, although defendant argues that any opinions by Nauta related to the wetland should be excluded because he is not a "wetlands delineator" or a "wetland biologist," Nauta does not suggest in his report that he will provide testimony on wetland delineation or biology. Rather, he sets out his opinions about transport of contamination in surface waters.

15

Defendant does not dispute that Nauta holds expertise in surface waters, including wetlands, and contaminant transport. Therefore, I am denying defendant's motion to limit Nauta's testimony.

3. Motion to exclude evidence of a significant nexus, dkt. #194

Defendant has moved to preclude plaintiffs from introducing evidence at trial regarding whether there is a significant nexus between the wetland adjacent to the biofilter and Stream C or the Flambeau River. Defendant argues essentially that plaintiffs should be precluded from introducing any evidence on the liability issue remaining in this case because plaintiffs do not have any admissible evidence to introduce. As explained above, plaintiffs may introduce evidence from their expert witnesses on this issue. Moreover, this is not a proper motion in limine. A party may move to exclude specific pieces of evidence or specific testimony, but it is not appropriate to file a motion seeking to exclude all possible evidence on a subject regardless what form the evidence may be. If defendant believed plaintiffs could not prove the existence of a significant nexus, it should have made that argument at summary judgment. Accordingly, I will deny this motion.

4. Motion to strike the declaration of Harold Flater, dkt. #190

Defendant has filed a motion to strike the declaration of Harold Flater, which plaintiffs used in support of their motion for summary judgment on the issue of standing. Defendant contends that their recent deposition of Flater proves that his declaration was not made on personal knowledge and violates Fed. R. Civ. P. 56.

I will deny the motion to strike as unnecessary. The issue of standing has been resolved and was not dependent on the statements in Flater's declaration that are challenged by defendant. Even without Flater's declaration, plaintiffs adduced sufficient evidence to satisfy standing. Further, defendant does not explain how Flater's declaration is relevant to any issues remaining in the case. Thus, it is not clear why the parties or the court should spend time comparing the answers in Flater's deposition to the statements in his declaration.

ORDER

IT IS ORDERED that

1. The motion to exclude evidence that wetlands are not waters of the United States, dkt. #152, filed by plaintiffs Wisconsin Resources Protection Council, Center for Biological Diversity and Laura Gauger is DENIED.

2. Plaintiffs' motion to exclude legal opinion testimony by defendant Flambeau Mining Co.'s expert witnesses, dkt. #154, is GRANTED IN PART and DENIED IN PART. Defendant's experts may offer opinions as to whether the biofilter discharges into wetlands or Stream C, whether the wetlands have a physical, biological or chemical connection to Stream C or the Flambeau River and whether plaintiffs' experts applied appropriate methods and calculations in reaching their conclusions. They may not offer opinions about governing law or whether plaintiffs have satisfied their legal burden.

3. Defendant's motion to limit the testimony of John Coleman, dkt. #148, is DENIED.

4. Defendant's motion to motion to limit the testimony of Craig Roesler, dkt. #169,

17

is DENIED.

5. Defendant's notion to limit the testimony of David Chambers, dkt. #173, is DENIED.

6. Defendant's motion to limit the testimony of Robert Nauta, dkt. #177, is DENIED.

7. Defendant's motion to strike the declaration of Harold Flater, dkt. #190, is DENIED.

8. Defendant's motion to exclude evidence of a significant nexus, dkt. #194, is DENIED.

Entered this 17th day of May, 2012.

                                      BY THE COURT:
/s/
BARBARA B. CRABB
District Judge