IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

Wisconsin Resources Protection
 Council, Center for Biological
 Diversity, and Laura Gauger,

              Plaintiffs,

              v.                              Case No. 11-cv-45

Flambeau Mining Company,

              Defendant.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DEFENDANT'S ENVIRONMENTAL AUDIT REPORT (DKT. #40-34)**

---

      Defendant asserts two reasons why the FMC Environmental Audit Report ("Audit Report") can be clawed back after its production and filing six months ago: 1) Defendant did not waive any privilege by producing the report, and 2) Defendant can support its claim of privilege.  Defendant is wrong on both counts.  However, even if the Court allows the clawback, due to the untimely nature of the clawback and the closeness of trial, Plaintiffs respectfully request that the Court admit the facts contained in the document at trial, if not the document itself.

I.      **ARGUMENT**

      A.      <u>Defendant Misunderstands the Meaning and Implications of the Protective Order.</u>

Rather than accepting that the disclosure and attempted "clawback" of the Environmental Audit Report document ("Audit Report") at issue here are is governed by the Federal Rules of Civil Procedure, Defendant seeks to confuse the issue by misconstruing Plaintiffs' waiver arguments, and relying on an erroneous reading of the protective order.  Not only is Defendant's reliance on the protective order misplaced, even if that order does apply to this situation, Defendant has still waived its right to make this last minute and tardy assertion of privilege, and Plaintiffs may still seek to compel its production.

Defendant is simply incorrect that the protective order controls whether it has waived its privilege over the Audit Report.  Plaintiffs do not contend Defendant waived any privilege simply by disclosing the Audit Report with its discovery; Plaintiffs recognize that situation is governed by the protective order.  Rather, here Plaintiffs contend Defendant waived its privilege for a variety of reasons other than inadvertent disclosure, including the fact that the Audit Report has been disclosed on *public docket* for six months without objection from Defendant, and was included in Plaintiffs' summary judgment filing.  5/14/12 Saul Decl. ¶ 5.  The language of the protective order explicitly limits its application to a narrow set of waiver arguments: "The inadvertent or unintentional disclosure by the producing party of information subject to a claim of attorney-client privilege or work product immunity shall not be deemed a waiver in whole or in part of the party's claim of privilege or work-product immunity."  Dkt #120-1, ¶13.  In other words, when the argument that waiver has occurred for reasons

other than unintentional disclosure, the protective order does not apply.  As discussed

below, Plaintiffs do not argue that the sole reason the Audit Report must be produced is

because Defendant inadvertently or unintentionally disclosed the document.  Thus, the

protective order simply does not apply, and FRCP 26(b)(5)(B) and the cases interpreting

that Rule govern this motion to compel.

Even were the protective order to apply here Plaintiffs may seek to compel the

production of an inadvertently or unintentionally disclosed document.  The protective

order states that a party may ask for the return of inadvertently disclosed document,

but that, "[t]he party returning such information may move the Court for an order

compelling production of such information."  Dkt #120-1, ¶13.  Defendant argues that

Plaintiffs cannot file a motion to compel because they have not yet returned the

document, yet. Dkt. #221 at 6.  This is wrong for two reasons: 1) The language of the

protective order does not provide that the "party that has returned" the information

may move to compel, rather it says the party "returning" the information may do so.  In

other words, the party returning the document need not have actually returned it to

seek to compel its production.  2)  It would make no sense to force Plaintiffs to return a

document that has been entered in the public docket, used at a deposition, and

otherwise been broadly available before they may seek to compel its production, or re-

production.  This is underscored by the fact that Defendant has not moved to exclude

the Audit Report from the public docket or take any actions themselves to mitigate the

existing exposure.  Thus, not only is Defendant's reading of the protective order

contrary to its text, this argument is simply illogical.

In short, nothing in the protective order prevents Plaintiffs from moving to compel the production of the Audit Report.  For the reasons explained below, the Court should grant Plaintiffs' motion.

B.      The Audit Report is Not Privileged to Begin With.

The work product privilege provides limited protection against discovery of materials and information prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3).  As the Seventh Circuit has explained, "[T]he threshold determination in any case involving an assertion of the work product privilege . . . is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation.  The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad."  *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983).

Moreover, a "remote prospect of future litigation" does not bring the privilege into play; rather, the court should determine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation."  *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 604 (7th Cir. 1977) (quoting 8 Wright & Miller, Federal Practice & Procedure, § 2024)) (emphasis added by the Seventh Circuit).  As with the attorney-client privilege, the party seeking to assert the work product privilege has the burden of proving that "some articulable claim, likely to lead to litigation, has

4

arisen."  *Binks*, 709 F.2d at 1119 (quoting *Coastal States Gas Corp. v. Department of Energy*,

199 U.S. App. D.C. 272, 617 F.2d 854, 865 (D.C. Cir. 1980)).

The attorney work product privilege does not apply to the Audit Report because

it clearly was not prepared in "anticipation of litigation."  Rather, as stated in the Report

itself, it was prepared in accordance with the "Kennecott Minerals Company (KMC)

Corporate Health, Safety and Environment and Communities (HSE&C) Audit

Program."  (Dkt. #40-34 at FMC018163).  According to the Report, such audits are

"regularly performed" by KMC in accordance with established corporate protocols such

as "the Rio Tinto *Guidelines For HSE Auditing Within Group Companies.*"  *Id*.  In fact, as the

Report makes clear, it was but a routine update to the "Last Comprehensive Audit:

Environment Review conducted June 23-26, 1997 before mining operations ceased in

August 1997."  *Id*. at FMC018164.

The Audit Report was clearly not prepared in "anticipation of litigation" and

therefore the attorney work product privilege does not apply.  Furthermore, as to the

attorney-client privilege, Defendant's self-serving statements of privilege are

contradicted by the face of the document, which does not reveal that it contains any

privileged information.

C.     Any Claim of Privilege has Been Waived by Defendant

The Seventh Circuit uses a balancing test to determine whether an inadvertent

disclosure results in a waiver. *MSP Real Estate, Inc. v. City of New Berlin*, Case No. 11-C-

281, 2011 WL 3047687, *4 (E.D.Wis. July 22, 2011) (citing *Judson Atkinson Candies, Inc. v.

Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008)). Under the balancing test,

the court considers "(1) the reasonableness of the precautions taken to prevent

disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the

extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson*

*Candies*, 529 F.3d at 388 citing *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113,

116-117 (N.D. Ill. 1996).

> 1.    *Defendant has not set out specific facts describing its precautionary review*
> *procedures, or pointing to their reasonableness.*

In determining the reasonableness of the precautions taken to prevent disclosure,

the court focuses on the "objective reasonableness of the procedures," as opposed to the

subjective intent of the lawyers in their review. *Wunderlich-Malec Sys., Inc. v. Eisenmann*

*Corp.*, 05 C 4343, 2007 WL 3086006 (N.D. Ill. Oct. 18, 2007) *5.  The Seventh Circuit

requires the party disputing waiver to support its assertion that it used reasonable

precautions with "specific facts" demonstrating that it used a "sufficient screening

process." *MSP Real Estate, Inc. v. City of New Berlin*, Case No. 11-C-281, 2011 WL

3047687, at *5, citing *Kmart Corp. v. Footstar, Inc.*, Case No. 09 C 3607, 2010 WL 4512337,

*4 (N.D. Ill. Nov. 2, 2010) (precautions were unreasonable where the party did not

discuss software, records management systems, or other specific facts demonstrating a

"sufficient screening process."); *see also Wunderlich-Malec Sys., Inc.*, Case No. 05 C 4343,

2007 WL 3086006 at *5 (precautions were unreasonable where the party offered only a

"self-serving declaration that it made a 'diligent review' with no other factual basis).

When disclosure is complete, as here, the court requires a "very strong showing"

because a court order cannot "restore confidentiality and, at best, can only attempt to

restrain further erosion." *Stewart v. Gen. Motors Corp.*, 86 C 4741, 1988 WL 6927 *3 (N.D.

Ill. Jan. 27, 1988) *aff'd,* 892 F.2d 81 (7th Cir. 1989) (a party did not make the requisite

"strong showing" when they failed to provide adequate information about precautions

taken to ensure confidentiality of litigation files).

Even where parties put forth *some* evidence of a procedure, the court may still

question its reasonableness if the specific facts offered "leave[] unanswered questions"

or show an "ambiguous" procedure. *MSP Real Estate, Inc.,* 11-C-281, 2011 WL 3047687,

at *3.  For instance, even where a party outlines a pathway of review and method for

identifying privileged documents, the court may still find that the procedure is not a

reasonably precautionary.  For example, where a defendant physically removed some

documents and identified piles with Post-It notes, the court still found that the "relying

on Post-It notes to identify each pile" did not support a finding of reasonableness. *MSP*

*Real Estate, Inc.*, 11-C-281, 2011 WL 3047687, at *6.

In this case, Defendant has not shown its precautionary review procedures to be

reasonable – in fact, Defendant has not described *any* of its review procedures.

Defendant merely states that its attorneys requested review of responsive documents to

identify privileged information, but does not outline any specific procedures it used.

Def. Br. Dkt. # 221 at 3. Cari Anne Renlund's declaration is equally vague; she states

that Defendant's attorneys "reviewed records . . . subpoenas to identify any records

containing [privileged information] prior to . . . production." (5/16/12 Renlund Decl. ¶

10). These statements reveal no specific facts the court can use to assess the

reasonableness of Defendant's precautionary procedures – not even the Post-It note method.

Also, by waiting so long to confirm the privilege invocation, Defendant further betrays its lack of precautionary procedures with respect to privileged information. Had Defendant had a system in place to track and respond to potential "inadvertent" disclosures, Defendant would have "tracked down" and confirmed the privilege claim immediately following its first introduction on November 9, 2011. (5/16/12 Van Camp Decl. ¶ 4.) The fact that Defendant took six months to decide whether it wanted to assert a privilege shows that it had no procedures in place to identify and withhold privileged information to begin with. Defendant therefore fails this prong of the test.

    2.    *Defendant took more than five months to rectify its error.*

Where a party fails to take appropriate, timely steps to rectify its mistaken disclosure, courts find in favor of waiver of privilege.  The longer the time between the party's realization of disclosure and corrective action steps, the more likely the court is to find the privilege waived. For instance, the court was unsympathetic to a party who took two weeks to determine how an inadvertent disclosure occurred, *then* attempted to rectify the error. *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996); *but see Judson Atkinson*, 529 F.3d at 389 (disclosing party took "appropriate" steps to rectify its inadvertent mistake by sending an email three days following realization of inadvertent disclosure). The party's "lax" attempt at rectifying the situation supported a waiver of privilege.

8

Here, Defendant took over five months to invoke the "clawback" provision of Fed. R. Civ. P. 26(b)(5)(B) – hardly "appropriate" or timely.  In fact, Defendant itself admits that it first learned of the potential for inadvertent disclosure on November 9, 2011 during a deposition. (5/16/12 Van Camp Decl. ¶ 3.) The court could hardly find that such a long period – for which Defendant offers only vague excuses of trying to "track down" an attorney – is "appropriate" or timely in light of Defendant's initial claim of privilege. (5/16/12 Van Camp Decl. ¶ 4.) Defendant has thus failed this prong.

3. and 4.  *Scope of Discovery and Extent of Disclosure.*

The court weighs the scope of discovery and extent of disclosure in determining whether inadvertent disclosure results in waiver. For this factor, the court looks at the volume of production and the number of privileged documents, because inadvertent disclosures commonly occur when responding to broad requests to produce. *Sidney I. v. Focused Retail Prop. I, LLC*, 274 F.R.D. 212, 217 (N.D. Ill. 2011). Defendant confirms that it reviewed a large number of documents, and attempts to claw back only one.  Def.'s Br. Dkt. #221 at 3.  Thus, although it appears that factors three and four may weigh against Plaintiff in this case, the remaining factors strongly favor waiver of privilege.

5.      *Fairness Dictates the Privilege is Waived.*

Finally, the "overriding issue of fairness" factor weighs heavily in favor of requiring disclosure of the Audit Report.  As discussed in Plaintiffs' opening brief, the Audit Report contains information critical to Plaintiffs' ability to rebut Defendant's claim of good faith efforts to comply, relevant for penalties.  33 U.S.C. § 1319(d).

Defendant has urged the Court to show leniency because "FMC honestly believed that

it possessed all required permits to discharge storm water through the Biofilter."

Defendant Flambeau Mining Company's Proposed Findings of Fact – Penalties, Dkt. #

206, ¶6.  For Plaintiffs to demonstrate this is false, it requires documents such as the

Audit Report to demonstrate this is false.  For Defendant to attempt to disqualify one

piece of documentary evidence on the eve of trial is fundamentally unfair.  By contrast,

the Audit Report has been in the public domain for half a year and Defendant has still

done nothing to remove it.  This surely suggests that there is little, if any, prejudice

Defendant will suffer if it continues to be available to the Court as it weighs the extent

of remedies in this case.

> D.      Even if Defendant has not Otherwise Waive its Privilege, By Introducing
>         Issues of "Good Faith" and its Mental State, it has Waived Attorney-Client
>         Privilege

Finally, even if the Audit Report is privileged, and the Court finds Defendant has

not waived that privilege under any of the factors discussed above, Defendant has

nevertheless waived any claim to privilege by putting the facts contained in the

document in issue in this case.  As the Seventh Circuit has explained "a party waives

the attorney-client privilege when the contents of the privileged communications are

put in issue by the party asserting the privilege."  Matter of Cont'l Illinois Sec. Litig., 732

F.2d 1302, 1315, n. 20 (7th Cir. 1984) citing United States v. Woodall, 438 F.2d 1317, 1324

(5th Cir 1971)(en banc).  This makes sense, of course, because attorney-client privilege is

the attorney-client privilege "is a shield, not a sword," and thus "if [a party] injects into

the case an issue that in fairness requires an examination of otherwise protected

10

communications," it cannot then hide behind a claim of privilege to prevent the other

party from gaining access to that key information.  Cox v. Administrator U.S. Steel &

Carnegie, 17 F. 3d 1386, 1417, 1419 (11th Cir. 1994); see also Conkling v. Turner, 883 F.2d

431, 434 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client

privilege is waived when a litigant 'place[s] information protected by it in issue through

some affirmative act for his own benefit, and to allow the privilege to protect against

disclosure of such information would be manifestly unfair to the opposing party.'").

In this case, Defendant has argued as part of its argument to mitigate penalties

that it had a good-faith belief that it was complying with all environmental regulations.

See e.g. Defendant Flambeau Mining Company's Proposed Findings of Fact – Penalties,

Dkt. # 206, ¶¶6, 7.  In other words, Defendant has voluntarily "put into issue" facts that

pertain to its understanding and belief about its legal requirements.  The Audit Report

*directly* pertains to this issue, as it details precisely what Defendant believed its legal

obligations were.  E.g. Audit Report at FMC 0188174 (discussing permitting issues, and

stormwater discharges to Stream C).  Without this information, Plaintiffs will be unable

to fully rebut Defendant's claims about its mental state.  As Defendant has raised issues

that hinge on its past beliefs about its legal requirements, it has injected an "issue that in

fairness requires an examination of otherwise protected communications." Cox, 17 F.

3d at 1419.  Thus, the Court should not allow Defendant to hide behind attorney-client

privilege to the prejudice of Plaintiffs and justice in this case.

## II.      CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court grant their motion to compel production of the Environmental Audit Report (Dkt. #40-34) and find that it is not protected by either the attorney-client or the attorney work product privileges.  Alternatively, because Defendant's attempted clawback comes so late, Plaintiffs request that they still be allowed to use the facts contained in the document, if not the document itself, and order those facts admitted for trial.


Respectfully submitted this 17th Day of May, 2012.


McGILLIVRAY WESTERBERG & BENDER LLC

/s/Christa O. Westerberg
James N. Saul
Christa O. Westerberg
David C. Bender
Pamela R. McGillivray
McGILLIVRAY WESTERBERG & BENDER LLC
211 S. Paterson Street, Suite 302
Madison, WI 53703
608.310.3560 (Ph)
saul@mwbattorneys.com
westerberg@mwbattorneys.com
bender@mwbattorneys.com
mcgillivray@mwbattorneys.com

Daniel P. Mensher
Kevin M. Cassidy
PACIFIC ENVIRONMENTAL ADVOCACY CENTER
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR 97219
(503) 768-6926
dmensher@lclark.edu
cassidy@lclark.edu

12

Marc D. Fink
CENTER FOR BIOLOGICAL DIVERSITY
209 East 7th St.
Duluth, MN  55805
(218) 525-3884
mfink@biologicaldiversity

*Counsel for Plaintiffs Wisconsin Resources*
*Protection Council, Center for Biological Diversity,*
*and Laura Gauger.*