IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN RESOURCES PROTECTION
COUNCIL, CENTER FOR BIOLOGICAL
DIVERSITY and LAURA GAUGER,

                                                                                  ORDER

                Plaintiffs,

                                                                                11-cv-45-bbc

     v.

FLAMBEAU MINING COMPANY,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This citizen suit, brought under the Clean Water Act, 33 U.S.C. § 1365(a)(1), by plaintiffs Wisconsin Resources Protection Council, Center for Biological Diversity and Laura Gauger against defendant Flambeau Mining Company is scheduled for trial on May 21, 2012. Plaintiffs have filed three motions with the court relating to evidentiary and trial issues.

DISCUSSION

A.  <u>Motion to Compel, Dkt. #208</u>

      The first motion addresses defendant's recent attempt to "claw back" a 2005 environmental audit report addressing environmental compliance issues at its former mine site. Defendant contends that the audit report is protected by attorney-client and work product privileges and was produced inadvertently. Plaintiffs have sought to prevent

1

defendant from invoking the privileges by filing a motion to compel production of the document. Dkt. #208.

Defendant produced the report to plaintiffs on November 4, 2011, in response to an expansive request for production of documents that required defendant to review thousands of pages of material. Plaintiffs subsequently introduced the report during a November 9, 2011 deposition of one of defendant's employees and again as a exhibit with plaintiffs' summary judgment materials. (The audit report is docket #40-34 on the public docket for this case.) Specifically, plaintiff proposed as fact that,

> As part of the Environmental Audit in 2005, [defendant] determined that the reclamation plan requirements were likely more favorable to the mine than would be contained in a WPDES permit.

Dkt. #109 at ¶ 33.

At the time, defendant did not move to claw back the audit report, though it did state that its employee's discussion of the report may implicate the attorney-client privilege. Id. ("Ms. Murphy did not know whether the reclamation plan was more favorable or not. . . As was raised by [defendant's] counsel at Ms. Murphy's deposition, to the extent the statement reveals attorney-client privilege, it is inadmissible."). Defendant did not object to use of the report itself.

On May 11, 2012, defendant wrote to plaintiffs' counsel, seeking to claw back the audit report on the basis of attorney-client and work product privileges. Defendant states that the audit report was prepared with the assistance of an attorney, to identify potential health, safety, environmental and management issues and to discuss potential resolution of the issues in light of two anticipated litigation proceedings. Defendant contends that its

2

claw back request is governed by the protective order that was entered by the court in this case, which states that

> The inadvertent or unintentional disclosure by the producing party of information subject to a claim of attorney-client privilege or work product immunity shall not be deemed a waiver in whole or in part of the party's claim of privilege or work-product immunity, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. If a party has inadvertently produced information subject to a claim of immunity or privilege, the receiving party, upon request, shall promptly return the inadvertently produced materials, and all copies of those materials that may have been made or any notes regarding those materials shall be destroyed. The party returning such information may move the Court for an order compelling production of such information.

Dkt. #120-1.

If defendant had sought to claw back the audit report before plaintiffs relied on it at summary judgment, or within a reasonable time thereafter, I would agree with defendant that this provision of the protective order governs its request. However, this provision protects against "inadvertent or unintentional disclosure" of a privileged document. In this situation, defendant did more than simply "produce" the document inadvertently; defendant failed to object to plaintiffs' reliance on the document and its presence on the *public docket* for more than five months. Defendant waived any claim to privilege by failing to object in a timely manner and by failing to provide a sufficient justification for its delay. Therefore, I am granting plaintiffs' motion to compel.

> B. <u>Motion to Exclude Evidence on Stipulated Issues and Issues Decided on Summary Judgment, Dkt. #229</u>

Plaintiffs have moved to preclude defendant from introducing evidence falling into three general categories: (1) issues plaintiffs believe were resolved at summary judgment; (2)

3

expert evidence related to the significant nexus inquiry; and (3) evidence regarding defendant's experts' qualifications and experience. I am denying this motion in full.

1. <u>Issues decided at summary judgment</u>

Plaintiffs contend that defendant should be precluded from introducing evidence on the nature and length of Stream C and the environmental impact that pollutants have on Stream C and the Flambeau River. Plaintiffs contend that issues relating to the nature and length of Stream C were resolved at summary judgment.

At summary judgment, I concluded that "Stream C qualifies as a water of the United States both because it is a tributary to the Flambeau River and because it has a significant nexus with the river." Dkt. #137 at 52. However, it is clear from the parties' disputes and discussions in their trial briefs that this conclusion requires clarification. Although I decided at summary judgment that Stream C is a water of the United States, this conclusion applied only to the portion of Stream C that exists south of Copper Park Lane. As I noted in the opinion, there was a factual dispute about the length of Stream C and whether it existed adjacent to the biofilter and north of Copper Park Lane. Defendant asserted that the biofilter discharged into a wetland because there was no stream north of the lane, while plaintiff asserted that the biofilter discharged into a channel of Stream C north of the lane. <u>Id.</u> at 45. However, both parties agreed that the stream existed south of the lane, and the undisputed facts showed that Stream C south of the lane was a tributary to the Flambeau River and had a significant nexus with the river.

Thus, the length and nature of Stream C and any other surface waters east of the

4

biofilter into which the biofilter overflowed are issues that must be resolved at trial. Therefore, I will not exclude defendant's evidence on this issue.

Additionally, I will not exclude defendant's evidence regarding the existence of naturally occurring metals in Stream C and the Flambeau River. As defendant points out, this evidence may be relevant to whether there is a significant nexus between the wetlands, Stream C and the river and may also be relevant to civil penalties.

2. Expert evidence related to the significant nexus inquiry

In its trial submissions, defendant proposes several facts related to the significant nexus inquiry. For example, defendant asserts that:

- [Defendant's expert, Elizabeth] Day has concluded Plaintiffs' experts have not analyzed the factors necessary to assess whether the wetland adjacent to the Biofilter has a relationship with Stream C.

- Plaintiffs' experts, Robert Nauta ("Nauta") and David Chambers ("Chambers"), have not conducted a test or scientific analysis on whether a relationship exists between the wetland adjacent to the former Biofilter and Stream C.

Dkt. #205 at ¶ 33, 35-46. Plaintiffs contend that defendant should be precluded from offering evidence to support these facts because there is no specific, mandatory "significant nexus test" that must be applied by one expert; rather, whether a significant nexus exists is a question for the court to decide.

I have already provided guidance to the parties on this issue. As I explained in the order on the parties' motions in limine, the parties' experts may not offer legal conclusions or opinions about the governing law. However, defendant's experts may discuss whether

plaintiffs' experts applied appropriate methods and calculations in reaching their conclusions. Dkt. #234 at 5.

3. <u>Evidence related to stipulated facts</u>

Finally, plaintiffs seek to preclude defendant from introducing evidence regarding its experts' qualifications, pointing out that defendant included several proposed facts on this issue in its statement of fact. Plaintiffs contend that because they have already stipulated to the technical knowledge and qualifications of defendant's experts, defendant's evidence will be cumulative and a waste of time.

Plaintiffs' motion is unnecessary. If the parties have stipulated to an experts' qualifications, it will likely be unnecessary to introduce evidence on this issue at trial. However, it was not improper for defendant to include these facts in its statement of facts. The court's pretrial order instructs the parties to submit a statement of facts, including stipulated facts, that they wish the court to find at the conclusion of trial. Dkt. #12 at 39. Accordingly, I am denying this motion.

C. <u>Motion to Exclude Evidence Regarding the Infiltration Basin Project, Dkt. #230</u>

Finally, plaintiffs have moved to preclude defendant from introducing evidence regarding the installation of infiltration basins that have replaced the former biofilter, contending that defendant failed to disclose this evidence in accordance with Fed. R. Civ. P. 26(a), and that such evidence is highly prejudicial. Defendant contends that this evidence

6

is relevant to two issues: whether the case is moot and the appropriate level of civil penalties.

Defendant may not introduce evidence regarding the infiltration basin project to support an argument that this case is moot because I have already rejected defendant's mootness argument. On April 24, 2012, after the court had issued a summary judgment opinion and with less than one month until trial, defendant filed a motion to dismiss this case on grounds that its new infiltration basin had mooted plaintiffs' claims. In a May 7, 2012 opinion and order, I explained that it was necessary to address defendant's motion because it raised questions of justiciability. Dkt. #181. However, I noted that to succeed on its mootness argument, defendant had a "heavy burden" of showing that it is "absolutely clear that [its] allegedly wrongful behavior could not reasonable be expected to recur." Id. at 5 (citations omitted). Defendant did not meet its burden and I denied the motion.

Now defendant wishes to try its mootness argument again by making new arguments and introducing additional facts about the infiltration basin. Although mootness is an issue of justiciability, this does not mean that parties should be permitted to assert it repeatedly as they think of new facts and arguments to submit to the court. Unlike other issues of justiciability, the mootness doctrine is unique in that it places a heavy burden on the party asserting it to convince the court that there is no more case or controversy to resolve and no possibility of providing effective relief to the plaintiff. Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 189 (2000); United States v. Concentrated Phosphate Export Association, 393 U.S. 199, 203 (1968). This means that if defendant does not meet that burden, either by failing to make persuasive arguments or failing to

introduce relevant facts, the court should not dismiss the case as moot. It does not mean that the court must give the defendant multiple opportunities to make its mootness argument.

Moreover, after reviewing defendant's arguments regarding mootness in its trial brief, dkt. #233 at 4-8, I conclude that defendant's new infiltration basin does not moot plaintiffs' claim for civil penalties. Although the infiltration basin may have stopped discharges of pollutants from the biofilter, defendant's proposed facts and arguments do not establish that it would be impossible for defendant to use a system in the future that would discharge pollutants in violation of the Clean Water Act. Allowing plaintiffs' civil penalty claims to go forward would discourage defendant from doing so.

That being said, I will allow defendant to introduce evidence regarding the infiltration basin during the remedy phase of trial. Evidence about the infiltration basin is highly relevant to whether defendant has acted in good faith to mitigate discharge of pollutants. Further, plaintiffs will not be unduly prejudiced by such evidence because they have been aware of the infiltration basin project for several months and could have foreseen that the project would be relevant to defendant's mitigation arguments. However, defendant may not introduce expert testimony on this subject that was not contained in its Rule 26(a) disclosures.

ORDER

IT IS ORDERED that

1. The motion to compel, dkt. #209, filed by plaintiffs Wisconsin Resources

Protection Council, Center for Biological Diversity and Laura Gauger is GRANTED.

2. Plaintiffs' motion to exclude evidence on stipulated issues and issues decided on summary judgment, dkt. #229, is DENIED.

3. Plaintiffs' motion to exclude evidence related to the infiltration basin, dkt. #230, is GRANTED IN PART and DENIED IN PART. Defendant Flambeau Mining Co. may not introduce evidence regarding its infiltration basin project to support an argument that this case is moot. Defendant may introduce evidence regarding the project during the remedy phase of trial.

Entered this 18th day of May, 2012.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge